<u>NOT FOR PUBLICATION</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| ANDREA CHIN MESSINA,<br><br>            Plaintiff,<br><br>v.<br><br>ANDREW SAUL,<br>Commissioner of Social Security,<br><br>            Defendant. | Case No.:  17-cv-02315 (PAZ)<br><br>**OPINION** |

**APPEARANCES:**

SHERYL GANDEL MAZUR, ESQ.
195 FAIRFIELD AVENUE, SUITE 2C
WEST CALDWELL, NJ 07006

      On behalf of Plaintiff

NAOMI B. MENDELSOHN
SPECIAL ASSISTANT UNITED STATES ATTORNEY
SOCIAL SECURITY ADMINISTRATION
OFFICE OF GENERAL COUNSEL
REGION III
300 SPRING GARDEN STREET, SIXTH FLOOR
PHILADELPHIA, PA 19123

PAUL KENDALL NITZE
SPECIAL ASSISTANT UNITED STATES ATTORNEY
SOCIAL SECURITY ADMINISTRATION
500 EAST STREET SW
9TH FLOOR
WASHINGTON, DC 20023

      On behalf of Defendant

**PAUL A. ZOSS, United States Magistrate Judge.**

     This matter comes before the Court pursuant to Section 205(g) of the Social Security Act,

as amended, 42 U.S.C. § 405(g), regarding the application of Plaintiff Andrea Chin Messina for

Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (42 U.S.C. §§ 401, et seq.). Plaintiff appeals from the final decision of the Administrative Law Judge ("ALJ") denying the application; Defendant, the Commissioner of Social Security ("the Commissioner"), opposes Plaintiff's appeal.[1] After careful consideration of the record, including the ALJ hearing transcript, the ALJ's decision, and the pleadings and memoranda of the parties, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure and Local Civil Rule 9.1(f). For the reasons set forth below, the Court affirms the Commissioner's decision that Plaintiff was not disabled.

## I.    PROCEDURAL HISTORY

On August 3, 2012, Plaintiff filed an application for DIB alleging a disability onset date of July 30, 2002. (R. 96.)[2] On September 20, 2012, the Commissioner determined that Plaintiff was not disabled and denied the application. (R. 96.) On December 31, 2012, Plaintiff's application was denied on reconsideration. (R. 103.) On May 13, 2015, an ALJ held a hearing on Plaintiff's application; Plaintiff was represented by counsel at the hearing. (R. 59.) On June 15, 2015, the ALJ issued a decision denying Plaintiff's application. (R. 43.) On February 8, 2017, the Appeals Council denied Plaintiff's request for review, thereby affirming the ALJ's decision as the "final" decision of the Commissioner. (R. 1.) On April 6, 2017, Plaintiff filed this appeal pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). ECF No. 1. On June 8, 2018, Plaintiff consented to have a U.S. Magistrate Judge conduct all further proceedings in the case to disposition pursuant to 28 U.S.C.

---

[1] On June 17, 2019, Andrew Saul was sworn in as Commissioner of Social Security for a six-year term that expires on January 19, 2025. Mr. Saul is therefore substituted as Defendant in his official capacity.

[2] "R." refers to the continuous pagination of the administrative record on appeal. ECF No. 5.

§ 636(c) and Rule 73 of the Federal Rules of Civil Procedure.  ECF No. 19.[3]  On September 17, 2019, the case was reassigned to the undersigned Magistrate Judge.  ECF No. 22.

## II.    LEGAL STANDARD

### A.    Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the authority to conduct a plenary review of legal issues decided by the ALJ.  *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000).  In contrast, the Court reviews the ALJ's factual findings to determine if they are supported by substantial evidence.  *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000); *see also* 42 U.S.C. §§ 405(g) & 1383(c)(3).  Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Pierce v. Underwood*, 487 U.S. 552, 565, 108 S. Ct. 2541, 101 L. Ed. 2d 490 (1988) (citation and internal quotations omitted); *see K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309 (JLL), 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018).  Substantial evidence is "less than a preponderance of the evidence, but 'more than a mere scintilla[.]'"  *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *see K.K.*, 2018 WL 1509091, at *4.

The substantial evidence standard is a deferential one, and the ALJ's decision cannot be set aside merely because the Court "acting *de novo* might have reached a different conclusion."  *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986), *cert. denied*, 481 U.S. 1069, 107 S. Ct. 2461, 95 L. Ed. 2d 870 (1987); *see also*, *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by

---

[3] Defendant has provided general consent to Magistrate Judge jurisdiction in cases seeking review of the Commissioner's decision.  *See* Standing Order In re: Social Security Pilot Project (D.N.J. Apr. 2, 2018).

those findings, even if we would have decided the factual inquiry differently.")(citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at *4 ("'[T]he district court . . . is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication[.]" *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484 (RBK), 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016). The Court has a duty to "'review the evidence in its totality'" and "'take into account whatever in the record fairly detracts from its weight.'" *K.K.*, 2018 WL 1509091, at *4 (quoting *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted)); *see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981)(substantial evidence exists only "in relationship to all the other evidence in the record."), *reh'g denied,* 650 F.2d 481 (3d Cir. 1981). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see K.K.*, 2018 WL 1509091, at *4. The ALJ decision thus must be set aside if it did not take into account the entire record or failed to resolve an evidentiary conflict. *See Schonewolf*, 972 F. Supp. at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

In reviewing applications for Social Security disability benefits, this Court has the authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). In contrast, the Court reviews the ALJ's factual findings to determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000); *see also* 42 U.S.C. §§ 405(g) & 1383(c)(3). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565, 108 S. Ct. 2541, 101 L. Ed. 2d 490 (1988) (citation and internal quotations omitted); *see K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309 (JLL), 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018). Substantial evidence is "less than a preponderance of the evidence, but 'more than a mere scintilla[.]'" *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *see K.K.*, 2018 WL 1509091, at *4.

The substantial evidence standard is a deferential one, and the ALJ's decision cannot be set aside merely because the Court "acting *de novo* might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986), *cert. denied*, 481 U.S. 1069, 107 S. Ct. 2461, 95 L. Ed. 2d 870 (1987); *see also*, *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.")(citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at *4 ("'[T]he district court . . . is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication[.]" *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)

("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484 (RBK), 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016). The Court has a duty to "'review the evidence in its totality'" and "'take into account whatever in the record fairly detracts from its weight.'" *K.K.*, 2018 WL 1509091, at *4 (quoting *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted)); *see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981)(substantial evidence exists only "in relationship to all the other evidence in the record."), *reh'g denied,* 650 F.2d 481 (3d Cir. 1981). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see K.K.*, 2018 WL 1509091, at *4. The ALJ decision thus must be set aside if it did not take into account the entire record or failed to resolve an evidentiary conflict. *See Schonewolf*, 972 F. Supp. at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although the ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 120 (3d Cir. 2000)); *see K.K.*, 2018 WL 1509091, at *4. The ALJ must provide "an explanation . . . of the reason why probative evidence has been rejected . . . so that a reviewing court can determine whether the reasons for rejection were improper." *Cotter*, 642 F.2d at 706-07; *see Burnett*, 220 F.3d at 121 ("Although the ALJ may weigh the credibility of the evidence, he must give some indication of

the evidence which he rejects and his reason(s) for discounting such evidence.") (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter v Harris*, 650 F.2d 481, 482 (3d Cir. 1981). Absent such articulation, the Court "cannot tell if significant probative evidence was not credited or simply ignored." *Cotter*, 642 F.2d at 705. As the Third Circuit notes:

> [U]nless the [ALJ] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776 (internal quotations omitted); *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "'explicitly' weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp. 3d 512, 518 (D.N.J. 2016). A decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny*, 745 F.2d at 221-22 (citations omitted); *see A.B.*, 166 F. Supp. 3d at 518. In assessing whether the record is fully developed to support an award of benefits, courts take a more liberal approach when

the claimant has already faced long processing delays.  *See*, *e.g.*, *Morales v. Apfel*, 225 F.3d 310, 320 (3d Cir. 2000).  An award is "especially appropriate" when "further administrative proceedings would simply prolong [a plaintiff's] waiting and delay his ultimate receipt of benefits."  *Podedworny*, 745 F.2d at 223; *see Schonewolf*, 972 F. Supp. at 290.

      **B.**     **Standard for Awarding Benefits**

      Under the Social Security Act, an adult claimant (i.e., a person over the age of eighteen) is disabled and eligible for Social Security disability benefits based on an "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  20 C.F.R. § 404.1505(a).  An impairment is "medically determinable" if it results from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques.  20 C.F.R. § 404.1529(b).  Thus, an impairment can be established by objective medical evidence from an acceptable medical source but cannot be established by a claimant's statement of symptoms, a diagnosis, or a medical opinion.  20 C.F.R. § 404.1521.

      The process for determining an adult's claim for Social Security disability benefits involves a five-step sequential inquiry.  20 C.F.R. § 404.1520(a)(4).[4]  The claimant bears the burden of proof at Steps One through Four.  *Hess v. Comm'r of Soc. Sec.*, 931 F.3d 198, 201 (3d Cir. 2019) (citing *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010)).  At Step Five, the burden shifts to the Commissioner.  *Id*.  At each Step, the ALJ must consider the combined effect of all the claimant's physical and mental impairments without regard to whether any single impairment,

---

[4] This case arises from a claim filed before March 27, 2017 and is therefore analyzed by this Court – as it was by the ALJ – under 20 C.F.R. § 404.1527.

8

if considered separately, would be of sufficient severity to proceed to the next Step. 20 C.F.R. § 404.1523(c).

At Step One, the ALJ decides whether the claimant is performing "substantial gainful activity." 20 C.F.R. § 404.1520(b). If so, then the inquiry ends because the claimant is not disabled. Otherwise, the ALJ proceeds to Step Two.

At Step Two, the ALJ decides whether the claimant has any "severe impairment" or combination of impairments that meets certain regulatory requirements. 20 C.F.R. § 404.1520(c); *see Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 546 (3d Cir. 2003) (this Step "is a *de minimis* screening device to dispose of groundless claims"). A "severe impairment" is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, then the inquiry ends because the claimant is not disabled. Otherwise, the ALJ proceeds to Step Three.

At Step Three, the ALJ decides whether the claimant's impairment or combination of impairments "meets" or "equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d). If so, then the claimant is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months. *Id*. § 404.1509. Otherwise, the ALJ proceeds to Step Four.

At Step Four, the ALJ must determine the claimant's residual functional capacity ("RFC") and determine whether the claimant can perform past relevant work. 20 C.F.R. §§ 404.1520(e)-(f). The RFC is the claimant's maximum ability to do physical and mental work activities on a sustained basis despite limitations from impairments. Social Security Ruling 96-8p, *Titles II and*

*XVI: Assessing Residual Functional Capacity in Initial Claims*, 1996 WL 374184, at \*2 (S.S.A. July 2, 1996). Past relevant work is performed (either as the claimant actually performed it or as it is generally performed in the national economy) within the last fifteen years or fifteen years prior to the disability date. 20 C.F.R. §§ 404.1560(b)(1), 404.1565(a); Social Security Ruling 82-61, *Titles II and XVI: Past Relevant Work – The Particular Job or the Occupation as Generally Performed*, 1982 WL 31387, at \*1-2 (S.S.A. Jan. 1, 1982). In addition, the work must have lasted long enough for the claimant to learn to do the job and be engaged in substantial gainful activity. 20 C.F.R. § 404.1560(b)(1). If the claimant can perform past relevant work, then the inquiry ends because the claimant is not disabled. Otherwise, the ALJ proceeds to Step Five.

At Step Five, the ALJ must decide whether the claimant, considering her/his RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. § 404.1520(g). Depending on the claimant's limitations, the ALJ will either follow the Medical-Vocational Rules (also referred to as "Grid Rules") found at 20 C.F.R. § 404, Subpart P, Appendix 2, or use the Grid Rules as a framework for decision-making. 20 C.F.R. § 404.1569a. The ALJ's consideration at this Step "typically involves 'one or more hypothetical questions posed by the ALJ to [a] vocational expert.'" *Hess*, 931 F.3d at 204 (quoting *Podedworny*, 745 F.2d at 218). If the ALJ determines that the claimant can perform other jobs that exist in significant numbers in the national economy, then the claimant is not disabled. Otherwise, the claimant is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

## III.    ALJ DECISION AND APPELLATE ISSUES

Plaintiff was 31 years old on the alleged onset date of July 30, 2002 and 36 years old on

the date last insured.  (R. 97.)[5]  At Step One, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date through her date last insured of December 31, 2007.  (R. 48.)  At Step Two, the ALJ found that Plaintiff had the following severe impairments: disorder of the back, irritable bowel syndrome ("IBS"), and headaches.  (R. 48.)  Although the ALJ noted at Step Two that Plaintiff alleged mental issues, there are no medical reports in the file addressing that issue.  (R. 48.)  At Step Three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of any Listing.  (R. 48-49.)  At Step Four, the ALJ found that Plaintiff had the residual functional capacity to perform sedentary work subject to various non-exertional limitations.  (R. 49.)  The ALJ also found at Step Four that Plaintiff was unable to perform past work as a ticket agent (DOT # 238.367-026).  (R. 52.)  At Step Five, the ALJ found that a finding of "not disabled" would be directed by Grid Rule 201.28 if Plaintiff had the RFC to perform the full range of sedentary work.  (R. 53.)  The ALJ also found at Step Five that at least three  jobs – addresser (DOT # 209.587-010), document preparer (DOT # 249.587-018), and final assembler (DOT # 713.687-018) – existed in significant numbers in the national economy and could be performed by an individual with Plaintiff's age, education, work experience, and RFC.  (R. 53.)  The ALJ concluded that Plaintiff was not disabled from July 30, 2002 through December 31, 2007.  (R. 53.)

Plaintiff first argues in this appeal that the ALJ's residual functional capacity assessment is not supported by substantial evidence because it is not supported by the opinions of any medical sources.  ECF No. 9 at 7.  Plaintiff notes in this regard that there is no medical evidence to support the limitations contained in the RFC, and Plaintiff contends that the ALJ erroneously crafted the

_____

[5] The relevant period for Plaintiff's DIB application is July 30, 2002 (alleged onset date) through December 31, 2007 (date last insured).

RFC based upon his lay assessment of the medical evidence.  *Id.* at 7, 10.  For this reason, Plaintiff

asks the Court to remand the case with instructions to obtain medical expert testimony regarding

Plaintiff's functional limitations prior to her date last insured.  *Id.* at 22.  Plaintiff also seeks remand

on the basis that the ALJ did not properly evaluate Plaintiff's subjective symptoms and credibility,

and on the ground that the ALJ failed to resolve a conflict between the *Dictionary of Occcupational*

*Titles* ("DOT") and the testimony of the vocational expert ("VE").  ECF No. 9 at 10, 17.  Defendant

contends that this case should be dismissed on res judicata grounds because Plaintiff previously

applied for DIB for the same impairments now at issue in this case.  ECF No. 13 at 12.  Defendant

also argues that if the Court should address this case on the merits, the ALJ's decision should be

affirmed in its entirety because it correctly applied the governing legal standards, reflected

consideration of the entire record, and was supported by sufficient explanation and substantial

evidence.  *Id.* at 16-29.

## IV.    SUMMARY OF RELEVANT EVIDENCE

### A.    Medical Evidence

#### 1.    Treating Providers

An MRI of Plaintiff's lumbar spine on March 24, 2007 demonstrated the presence of mild

disc bulging and moderate degenerative changes; the disc space demonstrated desiccation,

degeneration, and narrowing; and degenerative endplate changes were identified.  (R. 313.)  In

reviewing an x-ray of the lumbar spine on August 21, 2007, Clifford D. Barker, M.D. noted a

decrease in the L5-S1 intravertebral disc space with associated moderate degenerative

osteoarthritic changes and degenerative vacuum disc phenomena, as well as facet arthritis at that

level.  (R. 314.)

The record contains records from Joel H. Spielman, M.D., Plaintiff's treating physician.

On February 11, 2008, Plaintiff reported to Dr. Spielman that she had experienced constant back pain since December 2001, and then on December 25, 2006 she was reinjured when her son jumped on her back.  (R. 299.)  Plaintiff indicated that she had previously undergone and failed conservative care, including an epidural block and physical therapy.  (R. 298.)  Dr. Spielman referred to the March 24, 2007 MRI and recommended a repeat MRI of the lumbar spine and x-rays of the lumbar spine, including flexion and extension films, to best assess the severity of Plaintiff's degenerative disc disease.  (R. 298.)

Plaintiff had an MRI and x-rays per Dr. Spielman's directive.  An x-ray of the lumbar spine demonstrated severe end-stage degenerative disc disease at the L5-S1 level.  (R. 297.)  An MRI of the lumbar spine performed on February 21, 2008 indicated moderate degenerative changes at the L5-S1 level since the prior study, with development of a moderate sized disc herniation on the left "which does abut and may impinge on the left S1 nerve root."  (R. 315.)  In March 2008, Plaintiff decided to have anterior lumbar fusion surgery at the L5-S1 level, as conservative care had failed.  (R. 297.)

Documents from St. Clare's Hospital dated March 28, 2008 include an Operative Report from Dr. Spielman concerning the anterior lumbar fusion surgery.  (R. 307-08.)  In a progress noted dated April 3, 2008 – six days after Plaintiff's operation – Dr. Spielman indicated that Plaintiff was "doing quite well" and required no narcotic analgesic medication at that time.  (R. 296.)  At her six week follow-up on May 15, 2008, Plaintiff reported that she had been doing yard work, including removal of large stones.  (R. 295.)  Dr. Spielman noted that Plaintiff was "doing well," but he "strongly suggested that she avoid provocative activity, such as amateur masonry, or garden work."  (R. 295.)  Dr. Spielman also noted that x-rays demonstrated "satisfactory hardware and dowel placement at L5-S1 level but no obvious bridging bone yet."  (R. 295.)  In a three-month

post-operative appointment, Dr. Spielman indicated that Plaintiff is "doing well," that the x-rays demonstrated "excellent restoration of L5-S1 disc space and satisfactory hardware/dowel position," and that Plaintiff may ambulate but should avoid provocative activities. (R. 294.) In a seven month post-operative progress note, Dr. Spielman noted that Plaintiff "is doing quite well" and advised that she could resume low-impact cardiac conditioning and lightweight training. (R. 293.) At her one year follow up, Plaintiff reported to Dr. Spielman that the change in weather and weight gain were causing her to experience pain and stiffness. (R. 331.) In an eighteen month post-operative evaluation, Plaintiff reported that she was having occasional back pain, but Dr. Spielman indicated that the x-rays demonstrated satisfactory hardware position and that the fusion appeared solid. (R. 330.) He recommended that Plaintiff lose weight and follow up to determine whether there was any interval change in symptoms. (R. 330.)

The record also contains progress notes from Dr. Spielman dated January 18, 2012, nearly four years after Plaintiff's spine surgery, which indicate that Plaintiff reported "cracking pain in her lower back." (R. 329.) Dr. Spielman noted that there "is definitely evidence of interbody fusion, but there is also evidence of fracture of the left S1 screw." (R. 329.) Dr. Spielman wrote that he is "concerned about her symptoms, which are getting worse over time." (R. 329.) On February 23, 2012, Plaintiff reported to Dr. Spielman that she had discontinued Cymbalta for both pain and depression in the summer of 2011, and she was taking a different antidepressant medication which was not as effective. (R. 328.) Dr. Spielman noted that Plaintiff had residual right-sided lumbar radiculitis and a single fracture of an S1 screw with good interbody fusion. (R. 328.) Plaintiff had an erect posture and nonantalgic gait, she was able to heel and toe raise, she was able to forward flex to 90 degrees with normal spinal rhythm, there was no focal weakness distally, and tension signs were absent. (R. 328.) Dr. Spielman recommended weight loss,

cigarette cessation, and low-impact exercise.  (R. 328.)

Plaintiff began treating with a neurologist, Marcia A. Dover, M.D., in May 2013 concerning her headaches.  (R. 371.)   Dr. Dover opined that Plaintiff's headaches are migraines but felt that Plaintiff did not need long term prophylaxis, noting that Plaintiff only averaged headaches two times a month.  (R. 373.)  Dr. Dover recommended that Plaintiff take magnesium and riboflavin, as well as ibuprofen at the onset of a headache.  (R. 373.)  She also opined that Plaintiff does not have "significant memory loss" but does have "coexisting mood problems," and indicated that she would conduct further cognitive testing and would recommend a course of cognitive behavioral therapy if there is significant abnormality.  (R. 373.)

At a follow-up appointment six weeks later, Plaintiff reported that her headaches had increased in frequency to "pretty much every other day," but Plaintiff had not taken ibuprofen or vitamins as recommended by Dr. Dover.  (R. 370.)  Dr. Dover conducted cognitive testing and found that Plaintiff's score was consistent with "mild-to-moderate anxiety" and noted that "she certainly needs to have her depression better treated," but expressed concern that Plaintiff would not be compliant with medications.  (R. 370.)   In November 2013, Plaintiff reported that her headaches overall had decreased, and she admitted to Dr. Dover that she does not take ibuprofen at the onset of her headaches as instructed.  (R. 368.)  In a follow-up exam on February 17, 2014, Plaintiff reported to Dr. Dover that her headaches were under "relatively good control," that she only had five headaches, some of which were treated with ibuprofen, since her visit three months prior, and that her only complaint related to sciatic pain in her right leg on cold days and some muscle spasms in her back.  (R. 366.)  By September 22, 2014, Plaintiff reported that her headache frequency was "significantly decreased, now described as slight allowing her to function throughout the day."  (R. 363.)  Dr. Dover suggested at that time a trial of low-dose Topamax to

"see if we can get rid of her headaches altogether and minimize her need for abortive treatment." (R. 363.) Because Plaintiff continued to complain of back pain, Dr. Dover suggested she perform lower back exercises and return to her orthopedist. (R. 363.)

### 2.    State Agency Reviewing Consultants

Robert Starace, Ph.D. evaluated Plaintiff's DIB application on September 19, 2012 and considered only Plaintiff's claims of anxiety and depression. (R. 97.) Dr. Starace found that there was insufficient medical evidence of a medically determinable impairment between the alleged onset date and the date last insured and denied Plaintiff's application. (R. 99-101.) On reconsideration, Nancy Simpkins, M.D. affirmed Dr. Starace's findings with respect to Plaintiff's mental impairments and noted that evidence of Plaintiff's back impairment was not considered at the initial level but had been rated as "not severe" in Plaintiff's 2008 prior filing. (R. 107.) Dr. Herman Huber concluded that there was insufficient evidence relative to Plaintiff's physical condition prior to the date last insured to make a disability determination, and thus denied the claim on reconsideration. (R. 107-109.)

### B.    Non-Medical Evidence

### 1.    Function Report

Plaintiff completed a Function Report on August 22, 2012. (R. 247.) Plaintiff reported that she helps her children get dressed, does dishes, picks up around the house, does laundry and food shopping, takes her children wherever they need to go, uses the computer, makes dinner, helps the kids go to sleep, and the reads or uses the computer. (R. 247.) All three of her children help her with household chores. (R. 248.) Plaintiff reports that she sleeps poorly because she is "constantly woken up to go to the bathroom." (R. 248.) In terms of self-care, Plaintiff stated that she has difficulty bending and cannot get in the bathtub. (R. 248.) Sometimes, when she is in a

"funk," she may go two days without getting dressed, and sometimes she forgets to take her medication. (R. 249.) She prepares her own meals, but they are usually easy to prepare because standing over the stove is too difficult. (R. 249.) She is able to do laundry as long as someone brings it to her; she can mow the lawn because she has a tractor that allows her to sit, and it takes her approximately two hours to mow the lawn. (R. 249.)

Plaintiff reported that she has difficulty concentrating and motivating herself. (R. 249.) She is able to take her children wherever they need to go, although she needs to drive because she is otherwise too apprehensive. (R. 250.) She goes food shopping, which takes anywhere from ninety minutes to two hours, and she spends about ninety minutes doing recreational shopping. (R. 250.) Plaintiff is able to pay bills, handle a savings account, and use a checkbook. (R. 250.) When she has an anxiety attack, she is unable to do any chores or hobbies. (R. 251.) However, her friends will often visit or she will go to their house or they will go out for meals to "brighten [her] mood," and on a regular basis she goes food shopping, to her friends' houses, and to therapy. (R. 251.)

Plaintiff reports difficulty with her memory and concentration. She states that she forgets appointments and has difficulty concentrating when she has an anxiety attack or is in pain. (R. 251-52.) Plaintiff indicates that she has very little patience and is easily frustrated. (R. 253.) Plaintiff represented that she had an anxiety attack while completing the Function Report. (R. 254.)

### 2.    Hearing Testimony

Plaintiff testified at the hearing before the ALJ on May 13, 2015 concerning her physical and mental impairments. Plaintiff testified that she worked for Continental Airlines from 1994 until her position was administratively terminated in 2002. (R. 64, 75.) Plaintiff was an airport

sales agent, which required her to sell tickets, check people in, put tags on luggage, and put luggage onto a conveyor belt.  (R. 66-67.)

Plaintiff reported that on December 15, 2001, she tore a disc in her back when she was placing a bag on the belt.  (R. 67-68.)  She initially was treated by Dr. Gallick and then Dr. Benyushe, who observed the tear in Plaintiff's disc on an x-ray but told her there was nothing to be done at that time.  (R. 68.)  Plaintiff also sought treatment from a neurologist.  (R. 68.)  Plaintiff testified that she had "excruciating pain" in her lower back and legs that was "pretty much constant" and she started having migraines.  (R. 70, 71.)  Plaintiff rated her pain as an 8 and sometimes "it was past a ten."  (R. 71.)  She indicated that there were times she could not get in or out of the shower or could not move, and she stated that there were times that she could not take care of her three year-old child.  (R. 70.)  She was told that her pain was due to her weight and two consecutive pregnancies.  (R. 69.)  As a result of her physical condition and her resulting inability to care for her children, Plaintiff became depressed.  (R. 70.)

Plaintiff testified that in addition to pain from her work-related injury, she also experienced pain from IBS.  (R. 73.)  She was diagnosed with IBS by Dr. Chin and described it as "irritable bowel syndrome with constipation," where she was unable to go to the bathroom for "five weeks at a time on the average," which would push on her back and make it worse.  (R. 73.)  This condition, Plaintiff testified, caused difficulty with breathing.  (R. 73.)

Plaintiff contends that from April through June 2002, she was placed on "light duty" at work, but because she was taking muscle relaxers she had to use the bathroom "constantly."  (R. 74.)  She testified that she was "kicked out" of work because her employer was mad at her because she was "always in the bathroom."  (R. 75.)  Plaintiff indicated that she was required to take more breaks than would normally be authorized because she was "constantly going to the restroom" and

even had to call out of work some days.  (R. 76.)  She also testified that she is "constantly constipated," which causes "constant pain" that radiates in different directions.  (R. 76.)  Plaintiff further testified that in this course of "light duty" she was required to take more breaks due to the pain in her lower back and legs.  (R. 76.)  These breaks would require her to lay down for 20 to 45 minutes.  (R. 77.)

From the time Plaintiff stopped working in June of 2002 through 2007, Plaintiff could not get out of bed "[p]retty much every other day" because she was in "excruciating" pain.  (R. 78, 79.)  On the days she could get out of bed, it would take her 45 minutes to roll out of bed.  (R. 78.)  Plaintiff testified that she did not sleep well due to pain.  (R. 81.)  Plaintiff also had two pregnancies during this time period and felt like a "horrible mother" because she needed help taking care of her children.  (R. 78-79.)  She testified that she needed her 14 month-old daughter to change her newborn's diaper because Plaintiff could not bend over to change a diaper herself.  (R. 80.)  Plaintiff stated that she was unable to clean the house because she could not bend down to pick anything up.  (R. 82.)  She prepared food for her children but did so while sitting at the counter because she could not stand for too long.  (R. 84-85.)  After her children left for school, Plaintiff would sit on the couch or go back to bed for about two hours, at which point her husband "wanted [her] to get up out of bed and attempt to do stuff around the house."  (R. 85.)  Plaintiff testified that she took Cymbalta for depression, Flexeril for pain, different muscle relaxers that did not work, and ibuprofen for her headaches.  (R. 85-86.)

Plaintiff provided testimony regarding her depression, which she reported started shortly after her accident in 2001.  (R. 86.)  According to Plaintiff, her depression came "full force" in 2005 or 2006, at which time she wanted to be left alone in a dark corner.  (R. 86.)  These feelings lasted on average two weeks out of a month.  (R. 87.)  Her doctor prescribed Cymbalta in 2005 or

2006 which "cleared [her] up" at that point, although there are days "then and now" when Plaintiff wants to be left alone. (R. 87.)    Plaintiff also testified that she takes Xanax for anxiety attacks, which occur one or two times per week.  (R. 88.)

When Plaintiff finally saw Dr. Spielman in 2008, he ordered another MRI and Plaintiff had surgery three weeks later.  (R. 69.)  After the surgery, for about a year, Plaintiff was "okay."  (R. 89.)  Her back still caused pain, but the level of pain decreased.  (R. 89.)  As of the hearing date, Plaintiff explained that she feels tingling and numbness further down her back, and the physical pain is only two percent better than the pain she experienced before surgery.  (R. 89-90.)  Plaintiff testified that she cannot drive more than one hour at a time or bend down to pick items up from the floor, and her anxiety and depression are worse.  (R. 90.)  She indicated that she still has anxiety attacks once or twice per week and still experiences depression – to the point she cannot get out of bed – several times per month.  (R. 91.)

## V.    DISCUSSION

### A.    The Present Claim is Not Barred by Res Judicata

Before turning to the merits of the case, the Court first addresses the Commissioner's argument that this appeal is barred by the doctrine of res judicata.  This is Plaintiff's second application for DIB.  Plaintiff first filed an application for DIB on October 3, 2008, alleging disability as of December 15, 2001 due to a workplace injury when she lifted a heavy bag while working for Continental Airlines.  ECF No. 14 at 1, 21.  Plaintiff at that time alleged back pain, migraine headaches, anxiety, and depression.  *Id.* at 14, 21.  The agency denied that application (*id.* at 1), and Plaintiff did not request reconsideration.  Plaintiff then filed a second application in 2012 – the application that is now at issue on this appeal – alleging an inability to work beginning July 30, 2002 due to depression, anxiety attacks, nerve damage to her back and leg, and pain.  (R.

97.)  This application was denied initially and upon reconsideration.  (R. 101, 109).  Plaintiff requested and received a hearing before an ALJ who denied her claim for benefits.  (R. 43.)  She filed an appeal with the Appeals Council, which was denied.  (R. 1.)

The Commissioner contends that Plaintiff's 2008 application is based upon the same primary mental and physical impairments as the application currently at issue and covers the same time period, and therefore her claims are barred by the doctrine of res judicata.  ECF No. 13 at 12.  The Commissioner concedes that Plaintiff's current application is based on some conditions that were not part of her 2008 application – namely, IBS and headaches – but the Commissioner argues that this difference is immaterial.  *Id.* at 14 n.6.  The Commissioner also concedes that the state agency reviewers and ALJ did not find that Plaintiff's current claim was barred by res judicata.  *Id.* at 13.  The Commissioner argues nonetheless that Plaintiff's claim is barred because good cause to reopen the claim does not exist.  *Id.* at 13-14.  In reply, Plaintiff argues that evidence of the 2008 claim was not part of the record before the ALJ, that the Commissioner did not properly submit evidence of the 2008 claim in this appeal, and that this Court therefore cannot consider evidence of the prior application in deciding the present appeal.  ECF No. 17 at 2-3.  Plaintiff also argues that because the ALJ considered Plaintiff's 2012 application on the merits, there was a de facto reopening of the prior claim, thus barring any claim of res judicata.  *Id.* at 4-5.

An ALJ may dismiss a request for a hearing, and therefore decline to issue a "final decision," based on the doctrine of administrative res judicata.  20 C.F.R. § 404.957(c)(1) ("The doctrine of *res judicata* applies in that we have made a previous determination or decision under this subpart about your rights on the same facts and on the same issue or issues, and this previous determination or decision has become final by either administrative or judicial action[.]").  "It is well settled that federal courts lack jurisdiction . . . to review the Commissioner's discretionary

decision to decline to reopen a prior application or to deny a subsequent application on *res judicata* grounds." *Tobak v. Apfel*, 195 F.3d 183, 187 (3d Cir. 1999) (citing *Califano v. Sanders*, 430 U.S. 99, 107–09, 97 S. Ct. 980, 51 L. Ed. 2d 192 (1977)).[6]

Notwithstanding this limited jurisdiction, the Third Circuit has held "that we will examine the record to determine whether or not a reopening has occurred. A reopening, and thus a waiver of any claim of administrative res judicata, will be found 'where the administrative process does not address an earlier decision, but instead reviews the entire record in the new proceeding and reaches a decision on the merits . . .[.]'" *Coup v. Heckler*, 834 F.2d 313, 317 (3d Cir. 1987), *abrogated on other grounds by Gisbrecht v. Barnhart*, 535 U.S. 789, 122 S. Ct. 1817, 152 L. Ed. 2d 996 (2002) (quoting *Kane v. Heckler*, 776 F.2d 1130, 1132 (3d Cir. 1985)). "It is not our role to determine whether the Secretary had good cause for reopening, for in that respect his decision is not judicially reviewable. Rather, we look at the administrative record to determine whether an

---

[6] In claims arising under the Social Security Act, judicial review is permitted only in accordance with sections 205(g) and (h) of the Social Security Act, 42 U.S.C. §§ 405(g) and (h). Section 405(g) provides in relevant part that:

> Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action . . . [.]

42 U.S.C. § 405(g). Section 405(h) states:

> No findings of fact or decision of the Commissioner of Social Security shall be reviewed by any person, tribunal, or governmental agency except as herein provided.

42 U.S.C. § 405(h). Thus, judicial review of an action arising under the Social Security Act is available only to the extent that the Act provides. Because an administrative decision declining to reopen a prior claim or denying a subsequent claim on res judicata grounds does not require a hearing, it is not a "final decision . . . made after a hearing" as required for jurisdiction under § 205(g) of the Act.

explicit or a *de facto* reopening has occurred." *Id.* (citations omitted). "Even if a prior determination was not explicitly reopened, we may find that a *de facto* reopening has occurred." *Kaszer v. Massanari*, 40 F. App'x 686, 692 (3d Cir. 2002).[7]

In this case, Plaintiff filed both DIB applications after the date last insured of December 31, 2007, and therefore both adjudications examined whether Plaintiff became disabled prior to December 31, 2007. While the more recent application includes new medical records which Plaintiff contends demonstrate she was disabled prior to December 31, 2007, the ALJ reviewed medical records that dated back to February 2008, as well as Plaintiff's testimony concerning her condition from 2001 to 2015, and made a finding on the merits that Plaintiff was not disabled. (R. 50-53.) The ALJ stated that "[a]fter careful consideration of all the evidence, I conclude the claimant was not under a disability within the meaning of the Social Security Act from July 30, 2002, through the date last insured." (R. 46.) The Commissioner concedes that the ALJ did not address the earlier DIB claim for its preclusive effect, and the ALJ considered evidence that was relevant to Plaintiff's first application. The ALJ's failure to state that the earlier claim was not barred by res judicata, combined with the ALJ's consideration and ruling on Plaintiff's disability for the same time period that was covered by Plaintiff's 2008 application, is sufficient for the Court to find that the ALJ reopened Plaintiff's first application de facto. Consequently, the Court rejects the Commissioner's argument that the Court lacks jurisdiction to entertain the current appeal.

---

[7] The Commissioner argues that a claimant must show "good cause" for reopening a claim, citing the Third Circuit's decision in *Purter v. Heckler*, 771 F.2d 682 (3d Cir. 1985). ECF No. 13 at 13-14. However, in *Kaszer*, the Third Circuit examined the "ambiguity in our caselaw over whether we must find there was 'good cause' to reopen an application before we can find a *de facto* reopening occurred." *Kaszer*, 40 F. App'x at 691. The Third Circuit concluded that "[w]e do not have to find that the Secretary had 'good cause' before we can consider whether the Secretary *de facto* reopened [the claimant's] prior application." *Id.* at 692. Although *Kaszer* is not precedential, the Court follows this guidance and determines that good cause is not required to find a de facto reopening of Plaintiff's claim.

## B.    Evidence Not Before ALJ

The record contains a number of medical records that were not presented to the ALJ.[8]  In an undated letter to the ALJ, Plaintiff asserted that the attorney who represented her at the hearing had not retrieved many medical records.  (R. 8-10.)  Plaintiff retained new counsel who sought to submit new evidence to the Appeals Council.  (R. 287, 292.)  The Appeals Council held:

> In looking at your case, we considered the contentions raised by your representative as reflected in the material listed on the enclosed Order of Appeals Council.

> In looking at your case, we considered the additional evidence listed on the enclosed Order of Appeals Council with the entire record. We considered whether the Administrative Law Judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record.  We concluded that the additional evidence does not provide a basis for changing the Administrative Law Judge's decision.

> We also looked at treating notes from Anil Kapoor, M.D., dated April 30, 2015 through November 7, 2016 and medical record [sic] from Orthopedic Institute of New Jersey dated February 22, 2016 through October 31, 2016.  The Administrative Law Judge decided your case through December 31, 2007, the date you were last insured for disability benefits.  This new information is about a later time. Therefore, it does not affect the decision about whether you were disabled at the time you were last insured for disability benefits.

(R. 2.)

"No statutory provision authorizes the district court to make a decision on the substantial evidence standard based on the new and material evidence never presented to the ALJ." *Matthews v. Apfel*, 239 F.3d 589, 594 (3d Cir. 2001).  "The correctness of [the ALJ's] decision depends on the evidence that was before him.  He cannot be faulted for having failed to weigh evidence never

---

[8] Plaintiff does not contend that these records should be considered in connection with this appeal, but the Court addresses the extent to which such evidence can be considered on appeal because the evidence is part of the administrative record.

presented to him[.]" *Id.* at 592 (quotation omitted); *see Miller v. Comm'r Soc. Sec.*, 732 F. App'x 162, 165 (3d Cir. 2018) ("[A] district court cannot look to evidence never presented to the ALJ in determining whether that decision was supported by substantial evidence[.]") (quotation omitted). The Court therefore finds that it cannot consider in this appeal any of the medical evidence that was not submitted to the ALJ. The Court also finds that Plaintiff has waived any request for remand under Sentence Six of 42 U.S.C. § 405(g) as to this evidence. *See Miller*, 732 F. App'x at 164-65 (by failing to seek Sentence Six remand from district court, "[claimant] waived the opportunity for her benefits ruling to be reviewed in light of the new evidence").

Plaintiff does, however, argue that this case should be remanded based upon a lack of medical evidence and asks that the Commissioner, on remand, obtain medical expert testimony regarding Plaintiff's functional limitations prior to her date last insured. ECF No. 9 at 22. The Court views this request as a request for remand under Sentence Six, because "[a]rguing that the ALJ failed to develop the record is akin to arguing that there should be additional evidence taken before the Commissioner of Social Security." *Herring v. Colvin*, 181 F. Supp. 3d 258, 272 (M.D. Pa. 2014). Pursuant to Sentence Six of Section 405(g):

> The court may, on motion of the Commissioner of Social Security made for good cause shown before the Commissioner files the Commissioner's answer, remand the case to the Commissioner of Social Security for further action by the Commissioner of Social Security, and it may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding[.]

42 U.S.C. § 405(g). "In order to be material, 'there [must] be a reasonable possibility that the new evidence would have changed the outcome of the Secretary's determination.'" *Herring*, 181 F. Supp. 3d at 272 (quoting *Szubak v. Sec'y of Health and Human Servs.*, 745 F.2d 831, 833 (3d Cir.

1984)).  In other words, the materiality criterion requires a demonstration of prejudice.  *Id.* at 272.

Otherwise, "allowing a claimant to secure a remand for failing to develop the record without any

showing of prejudice would allow a back door around the materiality requirement of a sentence

six remand."  *Id.*

Plaintiff does not address Sentence Six or argue that the requirements of new evidence,

materiality, and good cause are met in this case, but only suggests that the ALJ should have

obtained a consultative examination and seeks remand.  Plaintiff's argument conflates the

requirements for remand: an ALJ must have failed to develop the record, and prejudice must arise

therefrom.  An ALJ's failure to develop the record is not in itself reversible error.

Initially, the Court notes that Plaintiff bears the burden of proving disability and must

submit all evidence known to her relating to her alleged impairments.  20 C.F.R. § 404.1512(a).

The agency has a responsibility to develop the record for the twelve month period preceding the

month in which Plaintiff files her DIB application "unless there is a reason to believe that

development of an earlier period is necessary[.]"  20 C.F.R. § 404.1512(b)(1).  The agency may

request a consultative examination but is not required to do so.  20 C.F.R. §§ 404.1512(b)(2),

404.1517.  "[T]he ALJ's duty to develop the record does not require a consultative examination

unless the claimant establishes that such an examination is necessary to enable the ALJ to make

the disability decision."  *Thompson v. Halter*, 45 F. App'x 146, 149 (3d Cir. 2002) (citing 20 C.F.R.

§§ 404.1517, 416.917; *Turner v. Califano*, 563 F.2d 669, 671 (5th Cir.1977)).  "The decision to

order a consultative examination is within the sound discretion of the ALJ[.]"  *Id.* (citing *Jones v.

Bowen*, 829 F.2d 524, 526 (5th Cir. 1987)).

Here, the ALJ considered the medical records from Dr. Spielman and Dr. Dover, as well

as statements from the state agency physicians, and Plaintiff's Function Report and hearing

testimony.  Plaintiff faults the ALJ for failing to obtain medical records or a consultative exam, but Plaintiff had ample opportunity to submit evidence in support of her application and did not do so.  The ALJ postponed the hearing date to allow Plaintiff time to obtain her medical records, and Plaintiff was represented at the hearing by an attorney.  (R. 59, 184.)  After the ALJ issued his decision, Plaintiff retained a new attorney and argued that the attorney who represented her at the hearing failed to submit additional medical records.  (R. 288.)  The Appeals Court granted Plaintiff additional time to file medical records but found that the additional evidence did not provide a basis for changing the ALJ's decision.  (R. 2.)

Additionally, Plaintiff does not assert that she was prejudiced by the failure of the ALJ to obtain additional medical records.  As discussed in greater detail below, the ALJ credited Plaintiff's subjective complaints of pain – even in the absence of medical records to support such allegations – and crafted an RFC that was more restrictive than required by the medical evidence. Plaintiff does not describe any limitations that are absent from the RFC that should have been included and, as such, she fails to demonstrate prejudice warranting a Section Six remand.

### C.    RFC Analysis

Plaintiff next asserts that the ALJ's decision is not supported by substantial evidence because the ALJ improperly relied upon his own lay opinion in formulating the RFC.  ECF No. 9 at 9.  Plaintiff notes that the State agency medical consultants did not complete an RFC assessment and the record does not contain any consultative examinations or medical source statements from any treating providers.  *Id.* at 8.  Plaintiff contends that the ALJ therefore "took on the role of medical expert and came up with his own assessment of [Plaintiff's] RFC, which was improper." *Id.*  Plaintiff cites the Third Circuit's decision in *Doak v. Heckler*, 790 F.2d 26, 29 (3d Cir. 1986) in support of her argument.  *Id.*

27

The Court is not persuaded by Plaintiff's argument for several reasons. First, the Court notes that the ALJ is responsible for making a residual functional capacity determination based on the medical evidence, and he is not required to seek a separate expert medical opinion on a claimant's residual functional capacity. *See* 20 C.F.R. § 404.1546(c) ("If your case is at the administrative law judge hearing level . . . , the administrative law judge . . . is responsible for assessing your residual functional capacity."). The Third Circuit has reiterated that "[t]he ALJ – not treating or examining physicians or State agency consultants – must make the ultimate disability and RFC determinations." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) (citing 20 C.F.R. §§ 404.1527(e)(1), 404.1546(c)); *see also Titterington v. Barnhart*, 174 F. App'x 6, 11 (3d Cir. 2006) ("There is no legal requirement that a physician have made the particular findings that an ALJ adopts in the course of determining an RFC. Surveying the medical evidence to craft an RFC is part of the ALJ's duties."); *Mays v. Barnhart*, 78 F. App'x 808, 813 (3d Cir. 2003) ("[T]he ALJ is responsible for making a residual functional capacity determination based on the medical evidence, and he is not required to seek a separate expert medical opinion.") (citing 20 C.F.R. §§ 404.1527(e), 404.1546(c)). Moreover, while a medical source may submit a statement about what an individual can still do despite his or her impairments, a "medical source statement must not be equated with the administrative finding known as the RFC assessment." Social Security Ruling 96-5p, *Policy Interpretation Ruling Titles II and XVI: Medical Source Opinions on Issues Reserved to the Commissioner,* 1996 WL 374183, at *5 (S.S.A. July 2, 1996). "The judgment regarding the extent to which an individual is able to perform exertional ranges of work goes beyond medical judgment regarding what an individual can still do[.]" *Id.* Therefore, the absence of a medical source statement in this case is not a basis to reject the ALJ's RFC determination.

Second, Plaintiff's reliance on *Doak v. Heckler* is misplaced.  In *Doak*, the ALJ found the plaintiff capable of light work and, applying the Grid Rules, found that the plaintiff was not disabled.  *Doak*, 790 F.2d at 27.  The Third Circuit noted that the record did not support a finding that the plaintiff could do light work, because the evidence of record contained the opinion of one physician who believed the plaintiff was totally disabled, another physician who found the plaintiff capable of sedentary work, and a third physician who made no conclusion about the ability to work but indicated that the plaintiff experienced shortness of breath with very little exercise.  *Id.* at 29.  The Third Circuit stated: "No physician suggested that the activity [the plaintiff] could perform was consistent with the definition of light work set forth in the regulations, and therefore the ALJ's conclusion that he could is not supported by substantial evidence."  *Id.*

In this case, unlike in *Doak*, the ALJ did not assess a lesser degree of limitation than found by any medical professional, and he did not discredit the medical opinion of Plaintiff's treating physician upon formulating Plaintiff's RFC.  Rather, the ALJ gave great weight to the opinion of Dr. Spielman, whose treatment notes indicated that in October 2008, after Plaintiff's back surgery she was cleared for low impact cardiac conditioning and lightweight training.  (R. 50-51.)  The ALJ also cited Dr. Spielman's records through 2012, which "continue[d] to show despite her complaints of disabling pain, physical examination was largely negative" as Plaintiff ambulated with a normal gait, was easily able to stand from a seated position, was able to heel and toe walk, and there was no focal weakness noted and tension signs were absent.  (R. 51.)  The ALJ also referenced Plaintiff's Function Report, in which she indicated that she could perform a wide range of activities of daily living; Plaintiff's behavior at the hearing, where there was no indication that she had limitations in sitting; and the observations of a disability interviewer, who noted that Plaintiff could stand without difficulty, leaned over the desk, and did not appear to be in any

discomfort. (R. 52.) Based on all of this evidence, the ALJ found that Plaintiff "clearly had a very serious back surgery" but "it is also clear that her condition had improved to the point where she could have performed sedentary work." (R. 51.) This discussion, in conjunction with the medical evidence of record, provided the ALJ with a substantial basis for his RFC regarding the limitations resulting from Plaintiff's back impairment.[9] Unlike the case in *Doak*, where the ALJ erroneously found that the plaintiff could do light work even though no physician had opined that the plaintiff could do light work and the evidence demonstrated that the plaintiff could at most do sedentary work, here the evidence supported the ALJ's finding that Plaintiff could do sedentary work.[10]

Third, concerning Plaintiff's mental impairments, the ALJ stated that "there are literally no medical reports in the file addressing" Plaintiff's mental health allegations. (R. 52.) Although Plaintiff argues that the ALJ's RFC determination is not supported by the record, Plaintiff does

---

[9] Because the ALJ's RFC assessment accounted for the limitations credibly established by the evidence of record, this case differs from *Shannon v. Comm'r of Soc. Sec.*, Civ. No. 15-6480, 2016 WL 5133741, at * 14 (D.N.J. Sept. 20, 2016), which was cited by Plaintiff in her opening brief. In *Shannon*, the court found that the ALJ "has not provided any support from the record" for the RFC assessment, noting that "the ALJ provided no medical or other evidence to support the conclusions that Plaintiff can sit for up to six hours per day with breaks, can handle low stress work, and would only be off task five percent of the workday." *Id.* at *14.

[10] In *Cummings v. Colvin*, 129 F. Supp. 3d 209, 215 (W.D. Pa. 2015), the court rejected the same argument that Plaintiff presents here. The Court in *Cummings* noted that various courts have adopted an "erroneous reading" of *Doak*. "*Doak* 'does not, as Plaintiff suggests, hold that an ALJ's RFC findings must be based on a particular medical opinion. . . .'" *Cummings*, 129 F. Supp. 3d at 215 (quoting *Doty v. Colvin*, No. Civ. A. 13-80-J, 2014 WL 29036, at *1 n.1 (W.D. Pa. Jan. 2, 2014)). "Rather, in *Doak*, '[t]he Third Circuit did nothing more than make a substantial evidence finding in light of a limited record . . . and subsequent Third Circuit case law confirms this understanding.'" *Id.* (quoting *Doty*, 2014 WL 29036, at *1 n.1). *See also Hrestak-Gumby v. Berryhill*, Civ. A. No. 3:16-cv-1113, 2019 WL 1995364, at *8-9 (M.D. Pa. Jan. 18, 2019)(providing thorough discussion of the Third Circuit's competing language in *Doak* and *Chandler* and noting that "[a]n RFC assessment, however, is not supported by substantial evidence where an ALJ assesses a lesser degree of limitation than found by any medical professional without citing to another type of evidence that supports his or her assessment."), *report and recommendation adopted by Hrestak-Gumby v. Berryhill*, Civ. A. No. 3:16-cv-1113, 2019 WL 1992127, at *1 (M.D. Pa. May 6, 2019).

not cite to any medical records other than a pre-operation evaluation from March 2008 in which
Plaintiff reported that she suffered from depression and anxiety.  ECF No. 9 at 3.[11]  Both State
agency assessments indicate that there was insufficient evidence to demonstrate that Plaintiff had
a "severe" mental impairment prior to the date last insured, and the ALJ determined that these
findings were "well supported and not inconsistent with the other substantial evidence."  (R. 51.)
As to Plaintiff's alleged mental limitations that the ALJ found were not supported by the medical
records, the ALJ was not required to account for them in the RFC.  Nonetheless, the ALJ gave
Plaintiff the "benefit of the doubt" and included in the RFC a limitation to "jobs that are simple
and repetitive tasks, such as those involving one and two-step processes to completion."  (R. 49,
52.)  The Court finds no error where, as here, the ALJ generously accounted for the limitations
credibly established by the evidence of record.

Fourth, concerning Plaintiff's allegations of headaches and memory loss, the ALJ cited the
report of Marcia A. Dover, M.D., who treated Plaintiff for headaches.  (R. 51.)  On initial consult,
Dr. Dover opined that she did not think Plaintiff needed long term prophylaxis and directed
Plaintiff to take vitamins and ibuprofen to alleviate migraine symptoms.  (R. 51, 373.)  She also
noted that she was not "impressed that [Plaintiff] has significant memory loss."  (R. 373.)   The
ALJ observed that Dr. Dover had recommended only vitamins and over-the-counter medication
and that she had "noted no functional deficits or negative effects on the claimant's ability to

---

[11] The Court notes that in a letter dated May 23, 2013, Marcia A. Dover, M.D. indicated that
Plaintiff "does have coexisting mood problems" and that "[f]urther cognitive testing will be done
here and if necessary neuropsychological evaluation for clarification and maybe a course of
cognitive behavioral therapy if there is significant abnormality."  (R. 373.)  In a letter dated July
1, 2013, Dr. Dover indicated that Plaintiff demonstrated mild-to-moderate anxiety and that "she
certainly needs to have her depression better treated[.]"  (R. 370.)  In addition, in a letter dated
September 22, 2014, Dr. Dover noted that Plaintiff takes Xanax and Cymbalta for anxiety.  (R.
363.)  These records are dated years after Plaintiff's date last insured.  There are no records that
establish a disability for anxiety prior to the date last insured.

perform activities of daily living and she never opined that [Plaintiff] was disabled." (R. 51.) The ALJ included in the RFC a limitation to simple work to account for concentration issues. (R. 49, 51.) This analysis, in conjunction with the medical evidence in the record, provided the ALJ with a substantial basis for his RFC regarding the limitations resulting from Plaintiff's headaches.

Fifth, to address Plaintiff's IBS, the RFC provides that Plaintiff must have ready access to a toilet. (R. 49.) There is no medical evidence in the record to support Plaintiff's claims of IBS, yet the ALJ credited Plaintiff's testimony that she had problems at work due to her IBS. (R. 50.) The RFC determination in this regard is supported by substantial evidence.

Finally, even assuming the ALJ's RFC determination was not supported by substantial evidence, the Court finds such error to be harmless   When alleging that an ALJ committed error in his or her analysis, "the party that 'seeks to have a judgment set aside because of an erroneous ruling carries the burden of showing that prejudice resulted.'" *Shinseki v. Sanders*, 556 U.S. 396, 409, 129 S. Ct. 1696, 173 L. Ed. 2d 532 (2009) (quoting *Palmer v. Hoffman*, 318 U.S. 109, 116, 63 S. Ct. 477, 87 L. Ed. 645 (1943)).  In asserting that the ALJ made an error at Step Four, Plaintiff carries the burden of demonstrating that prejudice resulted from such error.  It is not enough for Plaintiff to assert in a purely conclusory fashion that the ALJ failed to consider evidence that is inconsistent with the RFC determination.

Plaintiff here merely complains that the RFC is not supported by the record, but she does not "affirmatively identify evidence that the impairment imposes additional limitations on his or her functional capabilities." *Gullace v. Colvin*, Civ. A. No. 15-7630 (FLW), 2017 WL 714356, at *10 (D.N.J. Feb. 23, 2017)(citing *Rutherford*, 399 F.3d at 553).  Plaintiff does not even articulate how the RFC should have been further limited, let alone identify the specific evidence that she believes requires limitations on Plaintiff's ability to function in the workplace beyond those

already contained in the RFC.[12]  Accordingly, Plaintiff does not meet her burden at Step Four in demonstrating that any error by the ALJ concerning the RFC assessment was harmful.

### D. The ALJ's Consideration of Plaintiff's Subjective Symptoms at Step Four

Plaintiff argues that the ALJ did not properly consider her subjective complaints of pain and other symptoms under Social Security Ruling 96–7p.  "Credibility determinations as to a claimant's testimony, regarding pain and other subjective complaints are for the ALJ to make." *Malloy v. Comm'r of Soc. Sec.*, 306 F. App'x 761, 765 (3d Cir. 2009) (citing *Van Horn v. Schweiker*, 717 F.2d 871, 873 (3d Cir. 1983)).  The ALJ is required to assess the credibility of a claimant's subjective complaints using a two-step process. *See* 20 C.F.R. § 404.1529.  First, the ALJ must determine whether the record demonstrates that the claimant possesses a medically determinable impairment that could reasonably produce the alleged symptoms.  *See Gross v. Comm'r of Soc. Sec.*, 653 F. App'x 116, 119-20 (3d Cir. 2016) ("[W]hile there must be objective evidence of some condition that could reasonably produce pain, there need not be objective evidence of the pain itself.") (citations omitted).  Second, the ALJ must assess the credibility of the claimant's complaints regarding the intensity of the symptoms.  To do this, the ALJ must determine if objective medical evidence supports the claimant's complaints.  If so, the complaints should be given great weight and "may not be disregarded unless there exists contrary medical evidence." *Id.*

If objective medical evidence does not support the claimant's complaints, then the ALJ must consider other factors, including: (1) the claimant's daily activities; (2) the location, duration,

---

[12] Importantly, while the crux of Plaintiff's argument appears to be that her conditions were more severe than found by the ALJ, she does not challenge the ALJ's finding concerning the severity of her impairments at Step Three.  Rather, Plaintiff objects to the RFC assessment but at no point does she identify what additional limitations should have been included in the RFC.

frequency and intensity of the claimant's pain; (3) any precipitating or aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken by claimant to alleviate the pain; (5) treatment, other than medication, the claimant receives or has received for relief of pain or other symptoms, (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms; and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. § 404.1529(c)(3)(i)-(vii). The ALJ's "determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight."  Social Security Ruling 96-7p, *Policy Interpretation Ruling Titles II & XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements*, 1996 WL 374186, at *4 (S.S.A. Jul. 2, 1996).[13]  The ALJ cannot simply state that the "allegations have been considered" or that they categorically are not credible.  *Id.* at *2.

Plaintiff first contends that the ALJ disregarded her subjective complaints of pain arising from her lower back.  ECF No. 9 at 12.  She notes that medical records and imaging studies reflect that her back condition was deteriorating, which supports her continuing allegations of pain.  *Id.* However, the ALJ considered Plaintiff's testimony concerning "a host of symptoms," but he found that the medical records in which Plaintiff's treating physician opined that Plaintiff's condition improved to the point that she was cleared for low impact cardiac conditioning and lightweight training, and this evidence, he found, supported a finding that Plaintiff could perform sedentary

---

[13] Social Security Ruling 96-7p applies to SSA decisions that, like the ALJ decision in this case, were made prior to March 28, 2016.

work. (R. 51.) The ALJ also cited his observation that Plaintiff had no limitations in sitting at the

hearing. (R. 52.) This evidence supports the ALJ's finding with respect to Plaintiff's credibility.

Plaintiff also argues that the ALJ erred in his consideration of her headache symptoms,

asserting that the ALJ gave too much weight to the fact that Dr. Dover's medical records do not

specifically indicate that Plaintiff is disabled. ECF No. 9 at 12. Plaintiff contends that under Third

Circuit precedent, a physician's silence should not be construed as evidence that a claimant is not

in pain. *Id.* (citing *Mason v. Shalala*, 994 F.2d 1058, 1068 n. 15 (3d Cir. 1993)). The ALJ,

however, did not rely solely on the absence of a finding of disability in Dr. Dover's records. The

ALJ's analysis concerning Dr. Dover's records was as follows:

> The claimant also alleges disability due to depression, headaches
> and problems with her memory. It was her testimony that she was
> suffering with depression after the accident but she conceded that
> after she started taking Cymbalta in 2005 the condition improved.
> On May 23, 2013, she sought treatment with Dr. Dover for
> complaints of headaches, forgetfulness, and decreased sensation in
> the right arm. Following a thorough examination, Dr. Dover
> concluded she was having migraine headaches and described the
> frequency as two times a month. The doctor did not feel she needed
> long term prophylaxis to treat the headaches but only recommended
> magnesium and riboflavin, and over the counter medication.
> Regarding her complaints of memory loss, the doctor did not find
> the claimant had any significant memory loss issues. She also found
> the claimant did not have any significant sensory loss (Exhibit 7F).
> I note that this report is consistent with the claimant's ability to
> perform work involving no more than simple and repetitive tasks
> such as those involving one and two-step processes to completion.
> I note Dr. Dover noted no functional deficits or negative effects on
> the claimant's ability to perform activities of daily living and she
> never opined that the claimant was disabled.

(R. 51.) The ALJ did not rely only on the absence of a finding of disability in Dr. Dover's reports;

he also considered the substance of the reports, specifically noting that Dr. Dover only prescribed

vitamins and over-the-counter medication and did not feel Plaintiff needed more intensive

treatment. Furthermore, Plaintiff does not cite any subjective evidence of the limiting effects of

her headaches. In her hearing testimony, Plaintiff referred to her migraines only twice and did not testify specifically as to any disabling effects of her headaches, nor did she identify headaches in her Function Report. (R. 70, 86, 247-254.) Because Plaintiff has not demonstrated that her headaches inhibited her functioning in a manner that would change the ALJ's RFC assessment, she fails to meet her burden at Step Four that remand is appropriate. *See Rodriguez v. Colvin*, Civ. A. No. 14-6461, 2017 WL 462630, at *7 (D.N.J. Feb. 3, 2017) ("The plaintiff maintains the burden at steps one through four, and must present evidence establishing that each alleged ailment either individually or collectively limited his ability to perform work.") (citations omitted); *Foley v. Comm'r of Soc. Sec.*, 349 F. App'x 805, 808 (3d Cir. 2009) ("A diagnosis alone, however, does not demonstrate disability. Rather, [the plaintiff] was required to show that his headaches significantly limited his physical or mental ability to do basic work activities.") (citations omitted).

Plaintiff also objects to the ALJ's treatment of the evidence concerning Plaintiff's daily activities. ECF No. 9 at 13. Plaintiff argues that the ALJ placed too much weight on Plaintiff's ability to care for her children, noting that the testimony demonstrates that Plaintiff was unable to care for her children and required help from her husband. *Id.* at 13-15. Plaintiff notes her testimony that she is unable to care for herself or keep up with housework and her inability to lift, squat, bend, stand, walk, sit, kneel, climb stairs, concentrate, or complete tasks. *Id.* at 16. The ALJ did consider the limitations described in Plaintiff's Function Report, but he found such allegations were not supported by the medical record. (R. 52.) Nevertheless, the ALJ gave Plaintiff the "benefit of the doubt" and included various exertional and non-exertional limitations in the RFC. He credited Plaintiff's allegations of pain and her allegations of depression, but he found that they did not preclude all work and crafted the RFC to account for these conditions. (R. 52). In this regard, the ALJ noted that "the limited standing and walking" limitations and lifting

of only ten pounds limitation "gives credence to her testimony regarding pain upon extended exertion." (R. 49.) The RFC limitation restricting Plaintiff to simple one or two step instructions "takes into consideration any concentration issues that [Plaintiff] may have as a result of pain and allegations of depression and headaches." (R. 49.) Finally, because Plaintiff testified as to issues with IBS, the RFC included a limitation that Plaintiff must have "ready access to a toilet when needed." (R. 49.) The ALJ therefore did consider Plaintiff's subjective complaints and gave Plaintiff the "benefit of the doubt" in crafting the RFC, and his RFC assessment is supported by substantial evidence.

Even assuming the ALJ erred in considering Plaintiff's subjective reports of pain, Plaintiff again fails to demonstrate that the error is harmful. Plaintiff generally complains that the ALJ failed to consider certain evidence, but she does not argue that this evidence would have required limitations on her ability to function in the workplace beyond those already contained in the RFC. *See Gullace*, 2017 WL 714356, at *10.

### C.    Testimony of the Vocational Expert

Plaintiff next argues that the ALJ erred by failing to ask the VE whether her testimony was consistent with the DOT. Social Security Ruling 00–4p provides, in relevant part, that:

> Occupational evidence provided by a VE . . . generally should be consistent with the occupational information supplied by the DOT. When there is an apparent unresolved conflict between VE . . . evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE . . . evidence to support a determination or decision about whether the claimant is disabled.

Social Security Ruling 00-4p, *Policy Interpretation Ruling: Titles II and XVI: Use of Vocational Expert and Vocational Specialist Evidence, and Other Reliable Occupational Information in Disability Decisions*, 2000 WL 1898704, at *2 (S.S.A. Dec. 4, 2000). The Third Circuit has held

that "an ALJ is required to (1) ask, on the record, whether the VE's testimony is consistent with the DOT, (2) 'elicit a reasonable explanation' where an inconsistency does appear, and (3) explain in its decision 'how the conflict was resolved.'"  *Zirnsak v. Comm'r of Soc. Sec.*, 777 F.3d 607, 617 (3d Cir. 2014) (internal citations omitted).  However, the failure to comply with these requirements does not mandate remand, "so long as 'substantial evidence exists in other portions of the record that can form an appropriate basis to support the result.'"  *Id.* (internal citation omitted).

In this case, the ALJ erred in failing to question the VE regarding a potential discrepancy between her testimony and the DOT.  However, this failure is not a *per se* reason for remand.  *Id.*; *see also Jackson v. Barnhart*, 120 F. App'x 904, 906 (3d Cir. 2005) ("[E]ven if it was error for the ALJ to fail to solicit testimony about potential conflicts between this portion of the VE's testimony and the DOT, the error was harmless.  Where substantial evidence supports the ALJ's opinion and where the failure to solicit the testimony contemplated in SSR 00–4p is harmless, this court will not reverse the ALJ's decision.").

Plaintiff contends that the error was not harmless because the DOT conflicts with the VE's testimony regarding an individual's "access to a toilet when needed," and the ALJ's failure to resolve this conflict warrants remand.  ECF No. 9 at 17.  The Third Circuit has noted that remand may be appropriate where the ALJ fails to inquire regarding an "explicit" conflict between the VE's testimony and the DOT.  *Jones v. Barnhart*, 364 F.3d 501, 506 n. 6 (3d Cir. 2004).  The VE in this case testified that an individual of plaintiff's age, education, work experience, and RFC, including "ready access to a toilet when needed," would have been able to perform certain jobs such as Addresser (DOT # 209.587-010), Document Preparer (DOT # 249.587-018), or Final Assembler (DOT # 713.687-018).  (R. 53.)  The DOT is silent on whether the jobs in question

allow for ready access to a bathroom. *See* DICOT 209.587-010 (G.P.O.), 1991 WL 671797 (Jan.

1, 2016); DICOT 249.587-018 (G.P.O.), 1991 WL 672349 (Jan 1, 2016); DICOT 713.687-018

(G.P.O.), 1991 WL 679271 (Jan. 1, 2016). Consequently, there is no explicit conflict that triggered

the ALJ's obligation to inquire further. Neither Plaintiff nor her counsel challenged the VE on this

point at the hearing or otherwise identified any apparent inconsistency between the VE's testimony

and the DOT. The ALJ therefore did not erroneously fail to inquire into an explicit conflict

between the VE's testimony and the DOT.

      Plaintiff cites several cases in which an ALJ failed to identify the frequency of a claimant's

need for bathroom breaks in the RFC and that failure was determined to constitute reversible error.

ECF No. 9 at 20-21. Although not specifically articulated by Plaintiff, to the extent Plaintiff argues

that the ALJ erred by failing to specify the number of bathroom breaks in the RFC, this is not an

attack on the ALJ's questioning of the VE but is rather an attack on the RFC assessment at Step

Four. It was Plaintiff's burden to show any functional limitations arising from her IBS. Plaintiff

failed to sustain this burden; therefore, any error by the ALJ in failing to specify the number of

bathroom breaks in the RFC is harmless. "Under the harmless error rule, courts are not required

to remand an action when the error committed does not affect the outcome of the case." *Gullace*,

2017 WL 714356, at *10. As an initial matter, Plaintiff does not point to any medical opinions

describing limitations in her functionality due to IBS, or even subjective statements of Plaintiff

concerning the limiting effects of her IBS.[14] *See Lane v. Comm'r of Soc. Sec.*, 100 F. App'x 90,

---

[14] For this reason, Plaintiff's reliance on *Taylor v. Astrue*, No. 7:11-CV-162-FL, 2012 WL
3637254, at *11 (E.D.N.C. Aug. 1, 2012) is misplaced. In *Taylor*, the plaintiff testified that she
had bowel movements approximately four to five times a day due to colitis and that she needed to
use the bathroom two or three times in an hour. *Id.* at *3. The ALJ specifically found that the
plaintiff required "excessive bathroom breaks" but did not address the VE's testimony that a
person needing to take "an excessive number of unscheduled [bathroom] breaks" had the "potential

95-96 (3d Cir 2004) (where none of plaintiff's treating physicians concluded that she had any work-related functional limitations, Third Circuit found plaintiff could not establish disability under the Social Security Act, noting that "a claimant must show not just diagnosis, but functional limitations preventing performance of substantial gainful activity") (internal citation omitted).  The ALJ did incorporate regular bathroom breaks as a portion of the RFC to credit the severe condition he found with Plaintiff's IBS; however, failing to specify an exact number of bathroom breaks was not error given the paucity of evidence in the record on this issue.  In fact, Plaintiff testified that her IBS is a form of the disease that causes constipation, not diarrhea, and that she does not go to the bathroom for "five weeks at a time on the average."  (R. 73, 76.)  Her condition is debilitating, she claims, because it increases the pain in her back.  (R. 76.)[15]  Moreover, a report from St. Clare's Hospital dated March 27, 2008 indicates that Plaintiff has no bladder/bowel incontinence.  (R. 304.)  Dr. Spielman's progress notes from January 18, 2012 similarly indicate that Plaintiff reported no bladder or bowel incontinence.  (R. 329.)[16]

---

to be problematic."  *Id.* at *11.  Because the ALJ made no findings regarding the extent to which the plaintiff required unscheduled bathroom breaks or question the VE as to his definition of "excessive," the court found that the ALJ's Step Four finding was not supported by substantial evidence.  *Id.*  Here, by contrast, there is no evidence concerning the number of bathroom breaks that Plaintiff requires due to her IBS.  Moreover, whereas the VE in *Taylor* testified that it would be "problematic" to take excessive bathroom breaks for the jobs he identified, the VE in this case testified that there are jobs that are available that would allow an individual ready access to a toilet when needed.

[15] Plaintiff testified that she was terminated from her job at Continental Airlines in 2002 because she was "constantly in the bathroom," but she indicated that she needed to use the bathroom frequently at that time because she was on muscle relaxers, not because of her IBS.  (R. 74) ("In the process, I was on a lot of muscle relaxers.  So, I was constantly in the restroom.").

[16] The Court notes that this report does indicate stress-related incontinence, and Dr. Dover's records from 2013 also indicate that Plaintiff reports "[f]requent, urgent urination and some incontinence or leakage."  (R. 372.)  There is no indication that Plaintiff's incontinence began before her date last insured of December 31, 2007.  Furthermore, Dr. Dover's report again notes

In *Hopper v. Colvin*, No. 6:13-cv-01525-HZ, 2014 WL 6473566, at *5 (D. Or. Nov. 14, 2014), the district court considered a limitation in the RFC requiring "ready access to the restroom but not with a frequency that would affect productivity."  After reviewing the record evidence, the court determined that "it was reasonable for the ALJ to infer that [the plaintiff] required ready access to a restroom" but "there was no support for the conclusion that [the plaintiff] was incontinent or would require restroom breaks at a frequency that would be disruptive to his ability to work."  *Id.*  The court further noted that "to the extent the ALJ diverged from the evidence in the record, she did so to [the plaintiff's] benefit" because she "automatically eliminat[ed] from consideration any jobs that did not provide ready access to a restroom" and thereby "increased the likelihood that she would find [the plaintiff] to be disabled."  *Id.*  The court thus found that the ALJ did not err, and even assuming the ALJ erred, that error was harmless.  *Id.* ("the ALJ does not err by adopting a *more* restrictive RFC than the evidence in the record supports.")[17]

 Here, as in *Hopper*, Plaintiff does not explain how the ALJ's lack of specificity in the RFC concerning the frequency of bathroom breaks would have changed the outcome in this case.  While Plaintiff testified that as a result of her IBS, she was required to take more breaks than would normally be authorized, there is no medical evidence in the record to support this statement.

---

that Plaintiff experiences constipation and there is no indication that she has diarrhea.  (R. 372.) In May 2014, Plaintiff reported to Dr. Dover "[n]o new weakness, numbness or bowel or bladder incontinence[.]"  (R. 365.)  Plaintiff similarly denied bowel or bladder incontinence in September 2014.  (R. 363.)

[17] *Hopper* was distinguished in *Woods v. Comm'r of Soc. Sec.*, No. 6:14-cv-01766, 2015 WL 8780538, at *4 (D. Or. Dec. 14, 2015).  In *Woods*, the RFC contained identical language as the RFC at issue in *Hopper*, but the court found *Hopper* distinguishable because "[n]either the medical record nor the claimant's testimony in *Hopper* supported any conclusion about the frequency of the claimant's restroom trips," whereas in *Woods* the plaintiff testified "that he required frequent restroom trips and the ALJ adopted Plaintiff's testimony."  *Id.* at *4.  The Court finds the facts in this case more akin to those in *Hopper* because the record is devoid of evidence that Plaintiff requires frequent access to a bathroom.

Because substantial evidence supports a less restrictive RFC than that which the ALJ formulated, the Court finds any error in the ALJ's failure to specify the frequency of bathroom breaks in the RFC is harmless.

## VI.    CONCLUSION

For these reasons, the Court affirms the Commissioner's decision that Plaintiff was not disabled as set forth in the accompanying Order.


Dated: February 18, 2020                 s/ Paul A. Zoss
At Newark, New Jersey                    PAUL A. ZOSS, U.S.M.J.